IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION


GLENN CHARLES CAMPBELL              )
                                    )
v.                                  )          No. 2:10-0039
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security     )


To: The Honorable John T. Nixon, Senior District Judge


**REPORT AND RECOMMENDATION**

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Supplemental Security Income ("SSI").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 15) should be denied.


**I.  INTRODUCTION**

On April 27, 2007, Administrative Law Judge ("ALJ") John Garner issued an unfavorable decision on the plaintiff's applications for Disability Insurance Benefits ("DIB") and SSI. (Tr. 33-47.)  Although the defendant represents that "[i]t is unknown whether [the plaintiff] requested

review by the Appeals Council or in federal district court," Docket Entry No. 16, at 2 n.2, the

plaintiff represented that he "did not file an appeal relative to [the April 27, 2007,] decision." Docket

Entry No. 14, at 4. The plaintiff filed a second application for SSI on July 2, 2007, alleging a

disability onset date of April 28, 2007 (tr. 51), due to a "closed head injury, back problems, arthritis,

depression, migraine[s], pain in left foot and leg wants to buckle." (Tr. 76.) His application was

denied initially and upon reconsideration. (Tr. 52-58.) A hearing was held before ALJ James A.

Sparks on July 17, 2009.[1] (Tr. 18-26.) The ALJ delivered an unfavorable decision on October 8,

2009 (tr. 7-17), and the plaintiff sought review by the Appeals Council. (Tr. 6.) On March 2, 2010,

the Appeals Council denied the plaintiff's request for review (tr. 1-3), and the ALJ's decision

became the final decision of the Commissioner.


## II. BACKGROUND

The plaintiff was born on December 9, 1961, and was 45 years old as of April 28, 2007, his

alleged onset date. (Tr. 51.) He completed high school and had worked as a security guard. (Tr. 24,

113.)


### A. Chronological Background: Medical Records

On August 23, 2007, the plaintiff presented to Dr. Ramsey Walker, M.D., a consultative

examining physician, with complaints of a closed head injury, back problems and back pain,

arthritis, depression, and migraine headaches. (Tr. 168.) The plaintiff related that in 1996, he

---

[1] The defendant incorrectly refers to the hearing date as July 17, 2010. Docket Entry No. 16, at 5.

suffered a head injury at work but that when he went to the hospital he did not receive "any type of skull treatment or surgery," that eight years prior to presenting to Dr. Walker "he discovered that his neck had been fractured and the probable cause was from an injury in 1996," that his "ongoing back pain" was due to two ruptured discs for which he underwent three MRIs but for which he received no surgery or treatment because of his inability to afford medical care, that his failing health had made him depressed, and that he has monthly syncopal episodes that cause sudden leg weakness. (Tr. 168-69.) Dr. Walker noted that the plaintiff's upper and lower extremities showed normal ranges of motion, with no gross abnormalities; that his lower back had generalized tenderness to palpation "but no specific point level could be identified;" that his straight leg raises were negative; that he could get-up from a seated position without assistance; and that he had "[h]istory of [an] old closed head injury." (Tr. 170-71.) He diagnosed the plaintiff with lipoma of the scalp and chronic lower back pain. (Tr. 171.)

On September 6, 2007, Dr. Linda Blazina, Ph.D., a consultative examining psychologist, evaluated the plaintiff and noted that he was a "questionable historian due to possible malingering," had a slight limp, had a euthymic mood, and was fully oriented. (Tr. 173-74.) The plaintiff related that he felt depressed, had sleep disturbances, lacked interest in activities, and was irritable. (Tr. 174.) He also reported that he could dress and bathe himself without assistance, drive, shop, and prepare simple meals but that he does not do housework or laundry because of his pain. (Tr. 175-76.) Dr. Blazina diagnosed the plaintiff with a personality disorder, not otherwise specified ("NOS"), and assigned him a Global Assessment of Functioning ("GAF") score of 75-80.[2] (Tr. 176.)

---

[2] The GAF scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 43 (4th ed. 2000) ("DSM-IV-TR"). A GAF score within the range of

She opined that the plaintiff's abilities to understand, remember, and sustain concentration and persistence "did not appear to be impaired" and that his abilities to interact socially and adapt to changes in a workplace were not significantly impaired. *Id.*

On September 6, 2007, Dr. James N. Moore, a nonexamining DDS medical consultant, reviewed the plaintiff's available medical records (tr. 179-82) and opined that his physical impairments were not severe (tr. 179) and that he was less than credible since the alleged frequency and severity of his back pain, arthritis, and migraines were not supported by his limited medical evidence on record. (Tr. 182.) On October 1, 2007, Dr. Moore completed a Medical Consultant Analysis Form ("MCAF") and found that the plaintiff's physical conditions had improved. (Tr. 202.)

On September 19, 2007, Dr. Edward L. Sachs, Ph.D., a non-examining consultative DDS psychologist, completed a Psychiatric Review Technique Form ("PRTF") (tr. 183-96) and diagnosed the plaintiff with major depressive disorder, mild (tr. 186), and a personality disorder, NOS. (Tr. 190.) He concluded that the plaintiff had mild restriction of activities of daily living; mild difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 193.) Dr. Sachs noted that there was "no substantial or material change in severity of [the plaintiff's] psych [sic] symptoms or level of functioning." (Tr. 195.) Dr. Sachs then completed a mental Residual Functional Capacity ("RFC") assessment (tr. 197-200) and opined that the plaintiff was moderately limited in his "ability to maintain attention and concentration for extended periods;" in his "ability to complete a normal

---

71-80 means that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning." *Id.*

workday and workweek;" and in his "ability respond appropriately to changes in the work setting." (Tr. 197-98.)

On July 11, 2009, the plaintiff presented to the emergency room at Cookeville Regional Medical Center ("CRMC") with complaints of moderate left foot pain and although he was diagnosed with tenderness in his left foot, an x-ray revealed "[n]o significant bony abnormality."[3] (Tr. 208-14.)  He was prescribed Colchicine[4] and Indomethacin.[5]  (Tr. 208.)  The plaintiff returned to the emergency room at CRMC on August 29, 2009, with complaints of constant pain in his left foot and hip, was diagnosed with arthritis in his left foot and hip, and was given injections of Toradol[6] and Decadron.[7]  (Tr. 261-65.)   On September 3, 2009, the plaintiff presented to the emergency room at CRMC with complaints of migraine headaches, cold sweats, sinus pain, coughing, and sharp chest pain when he breathed. (Tr. 252-59.)  He was diagnosed with bronchitis and sinusitis (tr. 257) and an x-ray of the plaintiff's chest revealed "[e]levation of [the] left hemidiaphragm by air in the underlying stomach and colon." (Tr. 259.)

---

[3] Although the plaintiff presented with left foot pain and his treatment notes indicate that he was examined for left foot pain, his medical imaging record shows that his right foot was x-rayed. (Tr. 215.)  However, the defendant appears to suggest that the reference to his right foot on the x-ray report may have been in error. Docket Entry No. 16, at 5 n.4.

[4] Colchicine is gout-suppressant medication. Saunders Pharmaceutical World Book 175 (2009) ("Saunders").

[5] Indomethacin is a non-steroidal anti-inflammatory drug ("NSAID") used to treat arthritis. Saunders at 368.

[6] Toradol is a NSAID used to manage moderately severe acute pain. Saunders at 713.

[7] Decadron is an anti-inflammatory. Saunders at 204.

On September 21, 2009, the plaintiff presented to the emergency room at CRMC with left foot pain, was diagnosed with gout, and was prescribed Darvocet[8] and Indocin.[9] (Tr. 246-51.) In October and November of 2009, the plaintiff returned to the emergency room at CRMC on several occasions with complaints of headaches and left foot and toe pain. (Tr. 219-245.) MRIs of the plaintiff's left foot revealed "[b]one destruction involving a small portion" of the big toe, possible osteomyelitis,[10] and possible "severe osteoarthritic change of the first metatarsophalangeal joint. (Tr. 237-46.) He was diagnosed with gout and possible osteomyelitis and was prescribed Indocin, Decadron, Lortab,[11] Colchicine, and Prednisone.[12] (Tr. 219-245.)

### B. Hearing Testimony

At the hearing before the ALJ, the plaintiff was represented by counsel, and the plaintiff testified. (Tr. 18-26.) The plaintiff testified that he completed high school and is able to drive, but that he is unable to work because of gout, back problems, and severe migraine headaches. (Tr. 21.) He related that he takes Advil for his migraine headaches; that he is only able to walk or stand for five minutes due to foot pain; that he has difficulty bending, stooping, and squatting due to back pain; that he is not able to lift "very much;" that he is only able to sit for five minutes in a chair; that he has difficulty sleeping due to foot and back pain; but that he does not have any difficulty

---

[8] Darvocet is a narcotic pain-reliever and fever-reducer. Saunders at 202.

[9] Indocin is a NSAID that is prescribed to treat arthritis. Saunders at 368.

[10] Osteomyelitis is the inflammation of bone caused by a pus-producing organism. Dorland's at 1200.

[11] Lortab is a narcotic analgesic and antipyretic drug. Saunders at 415.

[12] Prednisone is a corticosteroidal anti-inflammatory. Saunders at 575.

concentrating. (Tr. 22-23.)  The plaintiff testified that on a scale of one to ten, his pain is a "nine-and-a-half," that he is able to dress and bathe himself, that he is able to prepare simple meals, and that his foot and back pain gets worse "when it rains or when it gets kind of chilly." (Tr. 23-24.)

The plaintiff related that he worked for Pearl Security until 2001, when he began to have "problems with [his] back and stuff." (Tr. 24.)  He testified that he was hit in the head with a steel door in 1996, and that injury still causes him neck and back pain. (Tr. 25.)  He also related that he suffers from gout and that he has to elevate his feet to prevent swelling. *Id.*

### III.  THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on October 8, 2009. (Tr. 7-17.) Based on the record, the ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since July 2, 2007, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following medically determinable impairments: closed head injury, degenerative disc disease, arthritis, migraine headaches, and depression (20 CFR 416.921 *et seq.*).

3.  The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921 et seq.).

* * *

4.  The claimant has not been under a disability, as defined in the Social Security Act, since July 2, 2007, the date the application was filed (20 CFR 416.920(c)).

(Tr. 12-17.)

# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Jones* v. *Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to

support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. Sept. 24, 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R.

§ 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff

can perform other substantial gainful employment, and that such employment exists in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See, e.g., Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Her*, 203 F.3d at 391. *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The Five-Step Inquiry

In this case, the ALJ decided the plaintiff's claim at step two of the five-step process. (Tr. 12-17.) At step one, the ALJ found that the plaintiff demonstrated that he had not engaged in

substantial gainful activity since July 2, 2007, the alleged onset of disability. (Tr. 12.) At step two, the ALJ found that the plaintiff had a closed head injury, degenerative disc disease ("DDD"), arthritis, migraine headaches, and depression, but he concluded that these impairments were not severe, either singly or in combination, and thus he was not disabled within the meaning of the Act. (Tr. 12-17.)

### C. Plaintiff's Assertions of Error

The plaintiff contends that a sentence six remand is appropriate to evaluate new and material evidence and that the ALJ failed to properly evaluate the credibility of his subjective complaints of pain. Docket Entry No. 14, at 7-14.

### 1. The plaintiff is not entitled to amend his alleged onset date.

Describing it as a "corollary issue," plaintiff's counsel relates that he received a "Report of Contact," dated June 4, 2009, in the updated record that he received minutes before the July 17, 2009, hearing, in which a representative of the Office of Hearings and Appeals reported a June 4, 2009, conversation with plaintiff's counsel as follows:

> Spoke with claimant's attorney Mr. Jared regarding the claimaint's alleged onset date.
>
> Explained that the claimant had alleged an onset date after A/C [Appeals Council] decision, therefore, claimant was not insured for Title II. However, if claimant amended onset date to day after ALJ decision, the claimant would still be insured for Title II benefits (DLI 12/31/2005). Potential onset date 1/28/2005 day after ALJ decision.

> 7/2/2009--as of this date no response from Attorney--sending claim on as
> scheduled.[13]

*See* Docket Entry No. 14, at 4-5, and Docket Entry No. 14-1. Plaintiff's counsel represented that he did not speak to a Hearings and Appeals Office representative on June 4, 2009, and has no documentation of having had any such conversation at any time.

It is not clear to the Court why the representative of the Hearings and Appeals Office would have suggested that the plaintiff amend his onset date to January 28, 2005. Presumably after having had a hearing, the ALJ entered an unfavorable decision on January 27, 2005.[14] However, on September 25, 2006, the Appeals Council vacated the January 27, 2005, decision and remanded the case back to the ALJ.[15] (Tr. 33.) The ALJ held a hearing on February 13, 2007, and issued an unfavorable decision on April 27, 2007. *Id.*

The plaintiff now seeks to amend his alleged onset date to January 28, 2005. However, he has provided no support for his contention that based on the June 4, 2009, Report of Contact, the plaintiff was or is entitled to amend his alleged onset date to the day after the January 27, 2005, decision when that decision was later vacated. *See* Docket Entry No. 16, at 2 n.2. Inasmuch as it appears that the plaintiff did not seek review of the April 27, 2007, decision, *see* Docket Entry No. 14, at 4, it was a final decision, binding as to the issue of disability through April 27, 2007, the date of the ALJ's second unfavorable decision. *See Cottrell v. Sullivan*, 987 F.2d 342, 344-45 (6th Cir. 1992) (per curiam).

---

[13] Although the "Date of Report" is listed as June 4, 2009, it was clearly updated on July 2, 2009.

[14] The plaintiff represents that the hearing before the ALJ was held on January 27, 2005, Docket Entry No. 14, at 3, but the record is silent on the date of the hearing. *See* tr. 33.

[15] The record does not include the September 25, 2006, order of the Appeals Council.

**2. A sentence six remand under 42 U.S.C. § 405(g) is inappropriate to consider the new evidence provided to the Court.**

The plaintiff contends that remand is appropriate to consider the October 1, 2009, MRIs of his left foot because the MRIs reveal a "severe osteoarthritic change of the metatarsophalangeal joint." Docket Entry No. 14, at 10. Newly submitted evidence that is not reviewed by the Commissioner can only be considered with a sentence six remand under 42 U.S.C. § 405(g). The Court can require an ALJ to consider additional evidence on remand only if the plaintiff shows that the evidence is "new" and "material," and provides "good cause" for failing to include the evidence in the record prior to the ALJ's decision. 42 U.S.C. § 405(g). *See also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir.2006); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

As the Sixth Circuit has explained, "[f]or the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Further, new evidence is "'material' only if there is a reasonable possibility that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence," *Foster*, 279 F.3d at 357 (citing *Sizemore*, 865 F.2d at 711), and "good cause" can be shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)).

The October 1, 2009, MRIs of the plaintiff's left foot (tr. 237-43)[16] were conducted nearly three months after the plaintiff's hearing (tr. 18-26), thus those medical reports satisfy both the new evidence and good cause requirements of 42 U.S.C. § 405(g) since the MRIs had not been completed by the time the plaintiff's hearing took place. However, the plaintiff falls short in satisfying his burden of proof regarding the materiality of the MRIs.

The record evidence indicates that the plaintiff first presented to the emergency room at CRMC with left foot pain in July of 2009, over two years after his alleged onset date, and that an x-ray of his foot revealed "[n]o significant abnormality." (Tr. 208-14.) Between August and November of 2009, the plaintiff returned to the emergency room at CRMC with complaints of left foot pain on multiple occasions; MRIs of his left foot revealed "[b]one destruction involving a small portion" of the big toe, possible osteomyelitis and possible "severe osteoarthritic change of the first metatarsophalangeal joint; he was diagnosed with gout, arthritis, and "possible" osteomyelitis; and he was prescribed anti-inflammatory medication and pain relievers. (Tr. 219-46.) Yet, as noted by the Commissioner (Docket Entry No. 14, at 14-15), the plaintiff cannot satisfy his burden at step two of the five step sequential process because the record medical evidence does not indicate that his left foot pain lasted or was expected to last for a period of twelve months since he first presented with left foot pain to the emergency room at CRMC in July of 2009, and the ALJ entered his decision only three months later in October of 2009. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). As the Commissioner points out, there is no evidence of the severity of his left leg symptoms after October 1, 2009, nor could the plaintiff have presented such evidence given the chronology of this

---

[16] It is not clear whether one or two MRIs were taken.

issue.[17]  Therefore, the plaintiff has failed to show an impairment that lasted or was expected to last for 12 consecutive months.

In sum, since the plaintiff's left foot impairment did not satisfy the Regulation's twelve month durational requirement, there is no "reasonable possibility that the Secretary would have reached a different disposition" if presented with MRIs of the plaintiff's left foot. *Foster*, 279 F.3d at 357 (citing *Sizemore*, 865 F.2d at 711).  Therefore, the October 1, 2009, MRIs of the plaintiff's left foot are not material and a sentence six remand is not appropriate.

The plaintiff also argues that, based on the October 1, 2009, MRIs of his left foot, in combination with his symptoms (Docket Entry No. 14, at 8-9), he meets the requirements of Listing 1.02.  Listing 1.02 provides that disability caused by major joint dysfunction is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively,[[18]] as defined in 1.00B2b; or

---

[17] In other words, even assuming the plaintiff might be considered disabled as of July 2009, he would have had to show that his disability lasted or was expected to last until at least July of 2010.  There is no such evidence in the record.

[18] The Regulations define the "[i]nability to ambulate effectively" as:
extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily

B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively,[19] as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. However, the Court will not address this argument since the plaintiff's left foot impairment, as discussed *supra*, did not meet the requirements of step two of the five step sequential process and is thus precluded from being evaluated under the Listings at step three of the five step sequential evaluation process. 20 C.F.R. § 416.920(a)(4)(ii)-(iii).

---

living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1)-(2) (internal citations omitted).

[19] The Regulations define the "[i]nability to perform fine and gross movements effectively" as:

an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2c.

**3. The ALJ did not err in analyzing the credibility of the plaintiff's subjective complaints of pain.**

The plaintiff contends that the ALJ erred in evaluating the credibility of his subjective complaints of pain. Docket Entry No. 14, at 11-12. Specifically, the plaintiff argues that the ALJ erred in concluding that his pain was not severe because the ALJ relied too heavily on his use of over the counter medication and on his activities of daily living in concluding that his pain was not severe. *Id.* The ALJ found that

> [t]he treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleges. In addition, there are a number of inconsistencies which detract from the claimant's credibility. The claimant alleges that his pain on an average day after taking over-the-counter medication is 9-1/2 to 10 on a scale of 1 to 10 (10 being the highest). This level of pain is extreme and is simply not supported by the medical evidence of record. Moreover, the claimant treats his pain symptoms with over-the-counter medication which would indicate that his pain is not severe. . . . The claimant explained throughout the record that he spends most of his day lying on a couch or a bed watching television because of headaches, back pain, and feet swelling; and the claimant also reported that he cannot sit, stand, or walk for more than 5 minutes without experiencing problematic pain in his back, legs, and feet. Nevertheless, there is no evidence that the claimant's impairments are so severe as to require that level of rest, precaution, or accommodation. The physician examiner found that the claimant had normal range of motion in his upper and lower extremities, and the claimant had a negative straight leg test. Finally, the claimant admitted that he still occasionally goes fishing and bowling, which are activities that require a fairly broad range of physical abilities and exertional efforts.[20]

(Tr. 16-17.)

---

[20] It is not at all clear that the plaintiff actually "admitted that he still occasionally goes fishing and bowling." On his August 7, 2007, Function Report, the plaintiff related that he spends his time lying "down on the bed and watch[ing] TV or just rest[ing]." (Tr. 120.) When asked what his hobbies and interests were, the plaintiff listed "watching NASCAR racing, fishing, playing video games. Ect [sic]." (Tr. 123.) However, he explained that he is unable to "do these things" "very much, just lay around because of my pain." *Id.* Again, the plaintiff reported to Dr. Warren on August 21, 2007, that his hobbies included "fishing, bowling and video games" but he "admit[ted] he has diminished these hobbies because of ongoing health problems." (Tr. 169-70.)

The ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 958 (N.D. Ohio 2003) (citing *Felisky*, 35 F.3d at 1036).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the Social Security Administration ("SSA") and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 416.929; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit in *Duncan v. Sec'y of Health &*

*Human Servs.*, 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[21]

The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

The ALJ acknowledged that there is objective medical evidence of the plaintiff's medically determinable impairments, satisfying the first prong of the *Duncan* test. (Tr. 14.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." The SSA provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. § 416.929(c). The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of his pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 416.929(c)(2). Besides reviewing medical records to address the credibility of a

---

[21] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. § 404.929(c)(3).[22]

In making his credibility determination, the ALJ relied on medical records from examining sources, on objective diagnostic testing, on his activities of daily living, and on the type of medication taken by the plaintiff. (Tr. 16-17.) First, in August of 2007, Dr. Walker found that the plaintiff's upper and lower extremities showed normal ranges of motion, with no gross abnormalities; that his lower back had generalized tenderness to palpation "but no specific point level could be identified; that his straight leg raises were negative; and that he could get-up from a seated position without assistance (tr. 170-71), and in September of 2007, Dr. Blazina noted that he "ambulated slowly but independently." (Tr. 174.) The plaintiff did not receive further medical treatment for his physical impairments until July of 2009, when he presented to the emergency room at CRMC with complaints of moderate left foot pain. (Tr. 208-14.) An x-ray revealed "[n]o significant bony abnormality" and he was diagnosed with tenderness in his left foot. *Id.* Next, the plaintiff related that he could dress and bathe himself without assistance, drive, shop, and prepare simple meals (tr. 21, 23-24, 175-76), and Dr. Sachs opined that the plaintiff's activities of daily living were only mildly restricted. (Tr. 190.) Finally, the ALJ noted that the plaintiff's use of over-the-counter pain medication to treat his pain symptoms undercuts his assertions of the severity of

---

[22] The seven factors under 20 C.F.R. § 416.929(c)(3) include: (i) the plaintiff's daily activities, (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms, (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms, (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.), and (vii) other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

his pain, even though the plaintiff testified that he takes Advil because he has not had insurance to cover prescription medication since 2005. (Tr. 21.)

Although the Court disagrees with the ALJ's determination that the plaintiff's use of over-the counter medication does not support the severity of his subjective complaints of pain, given his lack of health insurance, it is clear that the ALJ properly weighed the evidence in the record and did not err in finding that the plaintiff's allegations of disabling pain were not credible. The medical records from examining sources, the objective diagnostic testing, and the plaintiff's activities of daily living demonstrate that his physical impairments cause him a certain amount of pain, but that same record medical evidence does not support the plaintiff's subjective complaints that his pain is disabling.

## V.  RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 15) be DENIED and that this action be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge

-22-